**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000411
17-JAN-2020
08:13 AM**

NO. CAAP-19-0000411

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN RE VBR

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 17-00230)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Leonard and Chan, JJ.)

Appellant Mother (**Mother**) and Cross-Appellant Father (**Father**) appeal from the Order Terminating Parental Rights, filed on May 24, 2019, in the Family Court of the First Circuit (**Family Court**),[1] which terminated Mother's and Father's parental rights to their child, VBR.

On appeal, Mother contends there was not clear and convincing evidence that she was not presently willing and able to provide a safe family home for VBR, even with the assistance of a service plan, or that it was not reasonably foreseeable Mother would become willing and able to provide a safe family home for VBR, even with the assistance of a service plan, within a reasonable period of time.  Mother challenges Finding of Fact

---

[1]  The Honorable Paul T. Murakami presided.

(**FOF**) 74 and Conclusion of Law (**COL**) 18 in the Findings Of Fact And Conclusions of Law (**Findings and Conclusions**) entered by the Family Court on July 3, 2019.[2]

On cross appeal, Father contends he was not provided a reasonable opportunity to reunite with VBR because DHS failed to allow him to complete a service plan while incarcerated, resulting in his parental rights being terminated due solely to his incarceration.

Based on our careful review of the record, the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we affirm.

### Mother's Appeal

Mother has not challenged numerous factual findings made by the Family Court related to, among other things, the harm and threatened harm to VBR, Mother's long-term substance abuse, Mother's inappropriate parenting ability and criminal history, and Mother's lack of participation in services. Unchallenged findings of fact by the Family Court are binding on appeal. In re Doe, 99 Hawai'i 522, 538, 57 P.3d 447, 463 (2002). Regarding harm to VBR, the Family Court made the following unchallenged findings:

---

[2] FOF 74 states:

> 74. It is not reasonably foreseeable that Mother will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time not to exceed two (2) years from the child's date of entry into foster care on December 11, 2017.

(Footnote omitted).

COL 18 states:

> 18. It is not reasonably foreseeable that the child's Mother or Father will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

2

38. On August 25, 2017, the DHS received a report of concern for the newborn child. Upon hospital admission, Mother tested positive for methamphetamines. Mother was homeless and only had one prenatal visit during her pregnancy. Mother admitted to using methamphetamines daily for approximately six (6) years, and up until the day she gave birth to the child. The DHS developed an in-home safety plan to maintain the child in Mother's care. Father was incarcerated at that time.

39. On September 4, 2017, Father was released from incarceration, and placed on probation. Mother was then facing her own incarceration due to an outstanding warrant, and probation violation due to a prior Terroristic Threatening in the First Degree conviction. In preparation of Mother's incarceration and Father's recent release from incarceration, the DHS developed another in-home safety plan to maintain the child in Father's care. It was agreed between the DHS and parents that parents would always be supervised when with the child.

40. Mother was court ordered to enter Women's Way in her criminal matter. On October 10, 2017, Mother's transport did not pick her up to transport her to Women's Way due to a miscommunication. The DHS and the Women's Way program spoke with Mother that day and informed Mother that she must be at Women's Way by three o'clock that afternoon. The DHS informed Mother that if she did not attend Women's Way that the child would be placed in the custody of the DHS. Mother admitted at trial that although she was aware of this timeline, she did not make any effort to attend Women's Way that day. Parents' whereabouts were then unknown.

41. On October 11, 2017, Father arranged for paternal grandfather's girlfriend, [DH] to pick up the child. [DH] encouraged Mother to call the DHS, however, Mother did not call the DHS. Mother and Father's whereabouts became unknown and they both reportedly relapsed on illegal substances.

During the course of the proceedings in the Family Court, Mother became incarcerated but participated in the proceedings as indicated by the Family Court's findings related to the procedural history of the case, which Mother does not challenge. See FOFs 8-28.

With regard to Mother's substance abuse, the Family Court's unchallenged findings include:

48. Mother has an extensive substance abuse history based on her self-report of using methamphetamines and marijuana since the age of fifteen (15).

3

49. Mother stated her drug of choice is methamphetamine. Mother admitted she would rely on Father to administer the drug to her.

50. Mother's use of illicit substances inhibits her ability to provide appropriate care for the child.

51. On April 23, 2017, Mother tested positive for methamphetamines upon hospital admission for the delivery of the child. Mother admitted she used methamphetamines daily until the day she delivered the child and used marijuana approximately once a month. At trial, Mother admitted she was aware of the dangerous effects of using methamphetamines while pregnant, but continued to use methamphetamines throughout her pregnancy because she was addicted.

52. Mother was court ordered to attend the Women's Way program in her criminal matter. On October 11, 2017, Mother did not enter Women's Way, she then relapsed on illegal substances, and her whereabouts became unknown. While incarcerated, and under the terms and conditions of her probation, Mother started residential substance abuse treatment at Habilitat on March 27, 2018, but she left the program against clinical advice, and without approval on May 7, 2018. While incarcerated, Mother was encouraged to attend the Hina Mauka substance abuse treatment program, but she self-terminated services twice and complained about the environment and the staff.

53. Mother stated that she has resolved her substance abuse issue because she has abstained from using illegal substances while incarcerated. However, Mother must successfully complete all phases of a substance abuse treatment program, and demonstrate the ability to live a drug-free and sober lifestyle on a sustained prolonged basis, outside of incarceration, to show that she has actually resolved her substance abuse issues.

54. Throughout the pendency of this case, Mother failed to successfully complete any substance abuse treatment program, and has thereby failed to demonstrate the ability to live a drug-free and sober lifestyle on a sustained and prolonged basis to date.

With regard to Mother's inappropriate parenting ability and criminal history, the Family Court's unchallenged findings include:

56. Mother has inappropriate parenting skills as evidenced by leaving her child with others without making the appropriate legal arrangements, using methamphetamines while she was pregnant, her criminal history, and her current incarceration.

57. In October 2013, Mother was arrested and convicted of Terroristic Threatening in the First Degree. Subsequently, Mother was sentenced to probation. Mother

4

violated her probation, and around September 2017, Mother was facing incarceration.

58. Mother was given the opportunity to engage in residential substance abuse treatment at Women's Way as a part of her probation program, she did not attend Women's Way and violated her probation.

59. Mother was given the opportunity to engage in residential substance abuse treatment at Habilitat as part of her probation program. Mother entered Habilitat on March 27, 2018, but she left the program on May 27, 2018 against clinical advice. Mother did not maintain contact with the DHS social worker until May 31, 2018, when she was arrested for violating her probation.

60. At the time of the trial on the DHS' Motion to TPR on May 13, 2019, Mother was incarcerated at the Women's Community Correctional Center ("WCCC") due to non-compliance with the terms and conditions of her probation. Per Mother's testimony at trial, she had been placed in segregation for the past three (3) months due to a negative outburst and yelling.

61. After Mother's release, she would need to complete the recommended services contained in the family service plan, and then demonstrate her insight and ability learned from those services[.]

62. Mother's visits were supervised due to her incarceration. Mother's visits had not progressed to unsupervised visits due to her current incarceration.

63. At trial, Mother admitted that she is presently unable to provide stability and permanency for her child.

Regarding Mother's lack of participation in services, the Family Court's unchallenged findings include:

65. Mother completed a parenting education program while incarcerated. However, Mother did not provide the DHS verification of her completion due to her being placed in segregation. Mother is unable to demonstrate whether she has learned any appropriate parenting skills due to her current incarceration.

66. Mother completed a short psychological evaluation while she was briefly in residential treatment, but she did not complete the DHS' psychological evaluation.

67. Mother did not complete a substance abuse assessment or treatment program.

68. Mother did not complete any counseling services.

69. When Mother was released from incarceration, she did not cooperate with the DHS or maintain contact with the DHS despite DHS' numerous phone calls, and attempts

5

throughout the case. Mother admitted that she did not engage in services when she was released because she was not sober for a long enough period, and would become re-incarcerated for violating her probation terms and conditions.

70. Mother has not made any progress in the court ordered services to address the problems that necessitated the child's placement in foster care. Mother cannot demonstrate her ability to provide a safe family home for the child even with the assistance of a service plan.

71. At the time of the trial on the DHS' Motion to TPR on May 13, 2019, Mother was incarcerated and per her testimony, is scheduled for release on October 30, 2020. After her release, she would need to complete the recommended services contained in the family service plan, and then demonstrate her insight and ability learned from those services. Mother's prognosis for successful completion of services is poor based on her failure to participate in services during the eighteen (18) months this case had been open. Mother would not be able to reunify with her child within two (2) years from the child's date of entry into foster care on December 11, 2017.

(Footnote omitted).

Given the unchallenged findings and the evidence in the record, there was clear and convincing evidence that Mother was not presently willing and able to provide a safe family home, even with the assistance of a service plan. Dina Koyanagi (**Koyanagi**), a DHS section administrator and expert in social work, testified that DHS does not believe Mother is able to provide a safe family home and has not provided a safe family home for almost two years due to unresolved substance abuse, homelessness, and parental incarceration, which have been safety concerns since the case began. Mother did not complete recommended services but they were available while she was incarcerated. Mother was admitted into Women's Way, a substance abuse treatment program, but did not show up for her intake appointment and had not completed substance abuse treatment to date. Nonetheless, Mother testified she did not agree that she had a substance abuse problem but admitted she was addicted to methamphetamine, used it several times after she was released from prison twice, and did not complete any substance abuse

6

program. When Mother was released two prior times she asked about services but did not do them because she "just didn't have the strength to do it[.]" Mother also stated "[j]ust me being on the streets makes me want to use drugs." Mother admitted she did not participate in any counseling services when she was released because "I wasn't sober long enough to set it up for myself."

There was also clear and convincing evidence that it was not reasonably foreseeable Mother would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from the date VBR entered foster care. VBR entered foster custody on December 11, 2017. Trial on DHS's Motion to Terminate Parental Rights began on May 13, 2019. Jeana Baudouin (**Baudouin**), a DHS social worker, testified that Mother is not able to provide a safe family home, even with the assistance of a service plan, within a reasonable amount of time. Mother only completed parenting classes although other services were available while she was incarcerated. Baudouin was not able to make referrals for outside services while Mother was incarcerated. DHS is not required to provide services beyond what is available within the corrections system, and "completion of a service plan is an empty pursuit until the parent has been released and is capable of raising a child again." In re Jane Doe, 100 Hawai'i 335, 345, 60 P.3d 285, 295 (2002). Mother will be incarcerated until October 2020, approximately a year and a half after trial began. "[I]ncarceration may be considered along with other factors and circumstances impacting the ability of the parent to remedy the conditions of abuse and neglect." Id. (citation and internal quotation marks omitted). Mother failed to engage in services to address her safety concerns while she was released and while incarcerated, and she was not due to be

7

released from prison until more than two years had elapsed from the date VBR entered foster custody.

## Father's Appeal

Father contends he was not provided a reasonable opportunity to reunite with VBR because DHS failed to arrange a psychological evaluation for him while he was incarcerated. Father contends had he received a psychological evaluation, it may have resulted in a different service plan that could be completed during his incarceration. Father thus argues that DHS's failure to allow him an opportunity to complete a service plan during his incarceration resulted in terminating his parental rights based solely on his incarceration, contrary to In re Jane Doe, 100 Hawai'i at 345, 60 P.3d at 295. Father challenges FOFs 26, 29, 104, 109, 115, 117, 118 and COL 12 in the Findings and Conclusions entered by the Family Court on July 3, 2019.[3]

---

[3] Father does not specifically address any of the findings he purports to challenge or point to evidence contrary to particular findings. Rather, it appears Father challenges the specified findings because they indicate that he was unwilling or unable to provide VBR with a safe family home even with the assistance of a service plan, that it was not reasonably foreseeable that he would become willing or able to provide VBR with a safe family home even with the assistance of a service plan within a reasonable period of time, that Father was given a reasonable opportunity to provide a safe family home and to reunify with VBR, that Father's incarceration was not the sole basis for the Family Court's ultimate findings about Father's ability to provide a safe family home, that DHS provided reasonable efforts to reunify VBR with Father, and that DHS gave Father every reasonable opportunity to succeed and to reunify with VBR. See FOFs 26, 104, 109, 115, 117, 118. We will address Father's general arguments as set forth in his opening brief and will not address each of these findings individually. As to FOF 29, it states Father did not file a notice of appeal, but we note that Father filed a timely cross-appeal.

COL 12 states:

> 12. The DHS is under no obligation to provide services to an incarcerated parent when the services are not available to the incarcerated parent in the prison system. In re [Jane] Doe, 100 Haw. 335, 345, 60 P.3d 285, 295 (2002).

This conclusion of law is correct. In re Jane Doe, 100 Hawai'i at 345, 60 P.3d at 295 ("While there is no dispute that DHS had an obligation to make
(continued...)

8

Like Mother, Father does not challenge any of the Family Court's findings related to harm or threatened harm to VBR and those findings are thus binding on appeal. See FOF 38-41. Father also does not challenge the Family Court's findings related to Father's substance abuse, which state:

> 82. Father has an extensive substance abuse history based on his self-report of using methamphetamines and marijuana since he was sixteen (16) years old.
>
> 83. Father's drug of choice is methamphetamine and he admitted at trial to being addicted to methamphetamines and using methamphetamines everyday prior to incarceration.
>
> 84. Father's use of illicit substances inhibits his ability to provide appropriate care for his child.
>
> 85. When Father was first released from the OCCC, he was ordered to enter residential substance abuse treatment at the Salvation Army Adult Rehabilitation center, but he eloped the same day he was admitted into the program. Father admitted he was not ready to address his substance abuse issue, and he was subsequently arrested due to violating his criminal probation by leaving the program.
>
> 86. Father admitted at the trial that when he was released from incarceration during the duration of this case, he used methamphetamines, and did not maintain contact with the DHS, the relative resource caregivers, or visit his child because he was always "high".
>
> 87. Father has not completed any substance abuse assessment or treatment. Father failed to demonstrate his ability to maintain his sobriety when not incarcerated.

With regard to his participation in court ordered services, Father does not challenge the following findings by the Family Court:

> 96. The DHS developed five (5) family service plans dated October 13, 2017, February 12, 2018, June 12, 2018, September 11, 2018, and April 9, 2019 to assist Father in addressing his unresolved problems. Father knowingly and voluntarily stipulated to participate in the following court ordered service plans: October 13, 2017, February 12, 2018, and April 9, 2019 service plans.

---

[3]/(...continued)
every reasonable opportunity to reunite Father and Jane, it is not reasonable to expect it to provide services beyond what was available within the corrections system.")

97. Father stated that he enrolled in parenting, and is currently engaged in *Keiki O Ka Aina* parenting courses at OCCC. However, Father has not completed parenting, and is unable to demonstrate whether he has learned any appropriate parenting skills due to his current incarceration.

98. Father did not complete the DHS psychological evaluation.

99. Father did not complete a substance abuse assessment or treatment program.

100. Father did not complete any counseling services.

101. When Father was released from incarceration, he did not cooperate with the DHS or maintain contact with the DHS despite the DHS' numerous phone calls and attempts. Father admitted that he did not engage in services when he was released because he was always high. Father was then incarcerated again for violating his probation.

102. Father has not made any progress in the court ordered services to address the problems that necessitated the child's placement in foster care. Father cannot demonstrate his ability to provide a safe family home for the child even with the assistance of a service plan.

103. At the time of the trial on the DHS' Motion to TPR on May 13, 2019, Father was incarcerated and per his testimony, is scheduled for release on July 11, 2023. After his release, he would need to complete the recommended services contained in the family service plan and then demonstrate his insight and ability learned from those services. Father's prognosis for successful completion of services is poor based on his failure to participate in services in the eighteen (18) months this case had been open. Father would not be able to reunify with his child within two (2) years from the child's date of entry into foster care on December 11, 2017.

(Footnote omitted).

We further note that Father has not challenged the following findings:

105. Father's ability to access appropriate services during his incarceration were limited, but not by any actions of the DHS.

106. Father is not presently willing and able to provide his child with a safe family home, even with the assistance of a service plan.

. . . .

108. Father is currently incarcerated and has not addressed any of the DHS' safety concerns, which prevents him from being willing and able to provide his child with a

10

> safe family home. Although Father testified that he expects
> to be released on July 11, 2023, he has stated expected
> release dates in the past that have not occurred. Father's
> current release date is beyond the two years from the
> child's date of entry into foster care which is December 11,
> 2017.

(Footnote omitted).

DHS is required to "provide a reasonable opportunity to parents through a service plan to reunify the family." Id. at 343, 60 P.3d at 293 (citation omitted). "[A] claim for additional services and accommodations must be timely made." Id. at 344, 60 P.3d at 294. There is no cognizable procedural complaint when a request is not made until trial. Id. Father does not point to any part of the record where he made a request that DHS provide a psychological evaluation while he was incarcerated. It appears Father did not make such a claim until after trial. Thus, under In re Jane Doe, his argument is without merit. Father also admits on appeal that it is speculative that a psychological evaluation would have resulted in a different service plan. Such concession is supported by Father's testimony that he does not have any mental health issues and has not been diagnosed with anything.

Baudouin testified the psychological evaluation required by the service plan provides a cognitive assessment, thorough psychosocial background, recommendations for services, and an opinion on the ability to parent. Father was initially incarcerated at OCCC, released, and then incarcerated at Halawa Correctional Facility, where he is currently being held. Koyanagi testified she was aware of one case in which DHS arranged for a psychological evaluation at OCCC, but not at any other prison. Baudouin stated Father could not complete a psychological evaluation at OCCC because it was not provided at OCCC at the time Father was incarcerated there and DHS does not arrange for psychological evaluations at Halawa Correctional

11

Facility. In addition, Koyanagi testified that normally a person has to first complete substance abuse treatment before a psychological evaluation is performed for it to be valid. Father did not complete any substance abuse treatment while incarcerated nor when he was previously released from incarceration. Thus, even if DHS provided Father with an opportunity for a psychological evaluation while incarcerated it would not have been valid.

"[I]nvoluntary confinement, a criminal charge, or conviction for a criminal offense does not mandate a per se forfeiture of a parent's rights to a child." Id. at 345, 60 P.3d at 295 (citations omitted). However, as noted above, it may be considered along with other factors when determining whether a parent can provide a safe family home. Id. DHS's safety concerns with Father were unresolved substance abuse, homelessness, and parental incarceration since the beginning of the case. Termination of Father's parental rights was not based solely on his incarceration, although it was considered as a factor in the Family Court's decision. The Family Court found Father had inappropriate parenting skills by leaving VBR with others without making appropriate legal arrangements, used methamphetamine, had a criminal history, and was subject to long-term incarceration. See FOF 88. Father had the opportunity to engage in substance abuse treatment but left a program on the day he was admitted, he was due to be incarcerated until July 2023, after his release Father would need to complete recommended services and demonstrate insight and ability learned from services, Father admitted he did not visit with VBR during the period that Father was released from incarceration, and Father admitted he was presently unable to provide stability and permanency for his child. See FOFs 89, 91-95. Father also did not complete parenting classes, substance abuse assessment or

12

treatment, counseling services, did not maintain contact with DHS when he was released from incarceration, and admitted he did not engage in services while released because he was "high." See FOFs 97-101.

Given the record and the Family Court's unchallenged findings, termination of Father's parental rights was not based solely on his incarceration.

### Conclusion

Based on the above, the Order Terminating Parental Rights, filed on May 24, 2019, in the Family Court of the First Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, January 17, 2020.

Tae Chin Kim,
for Appellant Mother.

Herbert Y. Hamada,
for Cross-Appellant Father.

Nara E. Sitachitta,
Julio C. Herrera,
Erin L.S. Yamashiro,
Patrick A. Pascual,
Deputy Attorneys General,
for Petitioner-Appellee/Cross-Appellee.

Chief Judge

Associate Judge

Associate Judge

13